61 So.2d 62

### COOPER v. PEAK.

### 5 Div. 519.

Supreme Court of Alabama.

Aug. 27, 1952.

Rehearing Denied Nov. 6, 1952.

Walter J. Knabe and Fontaine M. Howard, Montgomery, for appellant.

Holley, Milner & Holley, Wetumpka, for appellee.

FOSTER, Justice.

In this case the Elmore Circuit Court, in Equity, denied relief to appellant, who was complainant in the trial court wherein

he sought to redeem certain lots in Elmore County from the respondent Peak. The redemption was in respect to two mortgages, one executed by Joel S. Cooper, Sr., who was the father of complainant, to Mrs. L. T. Pearson in May 1928, due in 1931, and transferred to J. M. Holley in 1935. Another mortgage was executed by the said Cooper to Holley in March 1939 and due November 1, 1939, covering the property involved. The mortgagor died intestate May 25, 1940, leaving as his heirs at law the complainant and eight other children. There was an administration upon the estate. The details of such administration are not given or whether there was a final settlement of the estate, nor whether it was solvent. The administrator was not made a party to this suit. J. M. Holley died in July 1941 without foreclosing said mortgages. On December 8, 1941, the mortgages were transferred by his executors under the power contained in the will to appellee Peak. Peak began proceedings to foreclose said mortgages under a power of sale without an order of court. Pending such proceedings and before the sale on January 15, 1942, appellant entered the military service. A few days thereafter, on January 26, 1942, appellee Peak concluded the foreclosure of said mortgages under said power, and at said sale became the purchaser, being so authorized. Appellant remained in the military service until December 19, 1945, when he was discharged. Appellee Peak entered the military service in 1944 and was discharged early in 1946. In the spring of 1946 he made valuable improvements on the lots costing him approximately $20,000. On July 27, 1946, Peak sold to one of the heirs, Johnnie Cooper, a portion of the property included in the mortgage and he conveyed to Peak whatever interest he might have in the balance of the property.

On October 16, 1946, this complainant filed a bill in equity seeking to exercise the equity of redemption in respect to one of those lots, upon which no improvements had been erected. He made respondents, along with Peak, the other eight heirs of the deceased mortgagor, including the said Johnnie Cooper. The other heirs filed a joint answer, admitting the allegations of the bill and joining in the prayer. The basis of complainant's contention that he was entitled to exercise the equity of redemption was that at the time of the foreclosure sale he was in the military service of the United States, as defined by the Soldiers' and Sailors' Civil Relief Act of October 17, 1940, 50 U.S.C.A.Appendix, § 501 et seq., and, therefore, that the foreclosure sale was not valid since there was no order of foreclosure granted by any competent court. The respondent Peak filed an answer and demurrer to the bill. The demurrer was sustained and complainant filed an amendment, to which the demurrer was again sustained, and from which an appeal was taken to this Court by complainant. Upon that appeal this Court affirmed the decree sustaining said demurrer as will be seen by the report of the case in 252 Ala. 384, 41 So.2d 590. Thereupon the complainant filed a substituted bill in which he sought to redeem not only lot No. 75, which was the only one included in the original bill, but additional lots 66 to 74, all of which were embraced in said mortgages. The same basis for relief is contained in the amended bill. There was an answer and demurrer to the bill as so amended, and also a cross bill by respondent Peak claiming that complainant was estopped to maintain his claim for redemption. There was no ruling of the court on the demurrer to the bill as last amended, but the cause was set down for hearing on the issues of fact made and upon the testimony taken orally before the presiding judge who found, as he declares the facts, in favor of respondent Peak, and denied relief to complainant and dismissed the bill. It is from that decree the complainant has prosecuted this appeal.

The first question for determination is whether appellant is protected by section 302(3) of the Soldiers' and Sailors' Civil Relief Act of October 17, 1940, which provides that "No sale under a power of sale * * * (not here material) shall be valid if made during the period of military service". Subsection 1 of section 302 makes that section apply "only to obliga-

tions originating prior to the date of approval of this Act and secured by mortgage * * * (not here material) upon real or personal property owned by a person in military service at the commencement of the period of the military service and still so owned by him." Subsection (2) of section 302 relates to suits commenced during the period of military service to enforce such obligation arising out of nonpayment of sums thereunder, occurring prior to or during the period of such service, and provides that in any such suit, unless in the opinion of the court the ability of the defendant to comply with the terms of the obligation is not materially affected by reason of his military service, the court shall either (a) stay the proceeding or (b) make some other equitable disposition of the case. Subsection (2) is not here applicable. Section 302(2), (3), Act of October 17, 1940, see 130 A.L.R. 794.

Some interesting questions of law are presented by the issues: (1) Does subsection (3) of section 302 apply to a mortgage as to which the soldier is not obligated, as must be true under subsection (2)? (2) Does it apply regardless of whether the *debtor* was able to pay at the time the soldier entered the service? (3) Does it apply when the soldier's ability to pay from sources other than his military compensation is not shown to have been inadequate? (4) Does it apply as a hard and fast rule regardless of other considerations such as that the soldier was one of nine children of the deceased mortgagor, all of whom were equally interested in removing the encumbrance from their common property? (5) And when the other children may be amply able to relieve the property owned in common from the mortgage. (6) And when the estate of the mortgagor may be amply able to pay its debt and remove the encumbrance, as was its duty. (7) Does it apply to a sale under a power when proceedings under the power were begun before the soldier was inducted, and completed a few days afterwards? (8) Can one tenant in common redeem land in its entirety (under the equitable power) by paying the entire mortgage debt when the equity of redemption by the other tenants in common had been effectually foreclosed by the sale? (9) Can a parol agreement be made at the time of the execution of the mortgage, in substance, that the law day of the mortgage shall not be effective as such, but that the mortgagee shall receive the rents and income from the property until thereby the debt shall be paid?

There do not seem to be any decisions which answer the questions above posed as to the application of subsection (3) of section 302, supra. Subsection (2) of section 302 has application to a proceeding commenced in a court during the period of military service and seems to have application only to obligations resting upon the soldier where there has been a breach of such obligation by him; and in that event the court has the power to determine whether his ability to comply with the terms of the obligation is materially affected by reason of his military service. Our case of Brown Service Ins. Co. v. King, 247 Ala. 311, 24 So.2d 219, dealt with that feature of the Act.

In the instant case there was no obligation on the part of the soldier. He merely inherited a ninth interest in land subject to a mortgage which had been executed to secure the personal obligation of his ancestor, who was his father. His father being dead at the time the soldier was inducted into the service and at the time of the foreclosure sale, the father's personal representative was liable for the indebtedness secured by the mortgage, and a claim for the same was filed against his estate. There was no contest of that claim as authorized by section 216, Title 61, as amended, pocket part, Code, and therefore it was the duty of the administrator of the estate to make provision for the payment of that mortgage debt, and if necessary to do so to obtain leave of the court to sell sufficient property. The personal property would be first subjected to the payment of the indebtedness and after that the real estate. Foster v. Foster, 219 Ala. 70, 121 So. 80; McCullough v. McCullough, 247 Ala. 286, 24 So.2d 123.

But we do not find it necessary to construe the Act of Congress for the purposes of this case. For argument we will assume that it does apply and appellant's equity of redemption was not cut off.

The foreclosure sale was not invalid insofar as the estate of the deceased mortgagor is concerned, or insofar as all of the other heirs of the estate, than the complainant, are concerned. The evidence shows that one of those eight children purchased a portion of the property from the respondent after the foreclosure sale and executed a conveyance to him of whatever interest he might have in all of the balance of the property. So that at the time the bill was filed the complainant was the only person who had the right to exercise the equity of redemption, if he had that right by reason of the Act of Congress to which we have referred.

■ The question is not a new one in Alabama, and is here repeated for convenience: Can one tenant in common redeem land in its entirety (under the equitable power) by paying the entire mortgage debt when the equity of redemption of the other tenants in common had been effectually foreclosed by the sale? The principle is of course universally recognized that a tenant in common seeking to exercise the equity of redemption must, if required by the mortgagee, redeem all the interests owned in the property and pay the entire debt. McQueen v. Whetstone, 127 Ala. 417, 30 So. 548; Wood v. Wood, 134 Ala. 557, 562, 33 So. 347; Bain v. Howell, 247 Ala. 514, 25 So.2d 167.

But there are limitations to that equity of redemption. In the case of Pitts v. American Freehold Land Mortgage Co., 157 Ala. 56, 47 So. 2-2, a mortgage was executed by the owner of 680 acres of land. He conveyed 200 acres of it to his wife. The mortgage was afterwards foreclosed and the mortgagee became the purchaser without authority. This conferred upon the mortgagor the right to disaffirm the foreclosure sale and exercise the equity of redemption. Under ordinary circumstances this is limited by analogy to two years. The mortgagor, then owning the equity of redemption in 480 acres of land,

failed to exercise that right within two years and therefore it was cut off. Subsequently the minor children having inherited 200 acres from the mother, subject to the husband's curtesy, filed a bill in equity to redeem. It was held that the complainant's right to redeem extended to the 200 acres which were owned by the wife at the time of the foreclosure. They were not required to pay the entire debt nor to redeem the 480 acres as to which the equity of redemption by the husband was foreclosed. In order to redeem the 200 acres credit was due to be made of the value of the 480 acres, and the balance of the mortgage debt is what was required to be paid in order to redeem the 200 acres. The basis of the reasoning is that the mortgagee obtained an indefeasible title by the foreclosure to the 480 acres which were not subject to be redeemed along with the 200 acres, notwithstanding it was all mortgaged to secure a single indebtedness. There can be no difference in this respect whether the party exercising the equity of redemption is the owner of that equity in certain specific items of property or an undivided interest in all of it. As to those items of property or that undivided interest which the redeeming party does not own, the mortgagee becomes the unconditional owner by his foreclosure, valid with respect to it.

■ It seems to be well established that the requirement to pay the entire debt and redeem all the property, if any, by one who owns only a share of the property mortgaged, is at the election of the mortgagee. Especially is this true where the mortgagee has himself acquired from some of the tenants in common their interest, and where other tenants in common have lost their equity of redemption for one reason or another. Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106; 59 C.J.S., Mortgages, § 848(b), page 1632. The rule requiring payment of the debt in full and forbidding a partial redemption is for the benefit and protection of the mortgagee. Louisville Joint Stock Land Bank v. Radford, supra; Quinn Plumbing Co. v. New Miami Shores Corp., 100 Fla. 413, 129 So. 690(9), 73 A.L.R. 600; 59 C.J.S., Mort-

gages, § 848, page 1634, notes 42 and 43. A redemptioner cannot compel a partial redemption over the insistence of the mortgagee that he redeem it all if any. 3 Wiltse on Mortgage Foreclosures (5th ed.) section 1229; 2 Jones on Mortgages section 1372.

The bill in this case seeks to exercise the equity of redemption by paying the entire mortgage debt remaining unpaid, but not for the improvements, and obtaining the shares inherited by all the cotenants, although one of them has conveyed his interest to the mortgagee and the mortgage was effectually foreclosed as to the others. The only right which complainant might assert under the circumstances, assuming that by reason of the Act of Congress he still has an equity of redemption, would be to redeem his proportionate interest in the property unless the mortgagee requires him to redeem all interests. If he should redeem his own interest, he would stand as a tenant in common with Peak and subject to the principle which applies when one tenant in common in good faith makes permanent improvements. Gordon v. McLemore, 237 Ala. 270, 186 So. 470. His redemption of all interests would, if permitted, operate so as to allow Peak as the owner of eight-ninths to share in its benefits. A court of equity would not approve such philosophy.

There is another and cogent reason why relief must be denied to the complainant, and that is based upon the principle of estoppel. It is contended by the defendant that after the complainant and he both had been released from the Army service, the defendant advised the complainant of his plan to improve the property and gave him an opportunity to purchase it or any part of it if he desired. This complainant declined, according to one aspect of the evidence. Thereupon the defendant proceeded to expend some $20,000 in making valuable improvements upon the property. One aspect of the evidence tends to show that the complainant knew the defendant was making the improvements and that defendant was claiming to be the owner of the property and made no protest.

This case was tried on oral testimony taken before the trial judge who denied relief to the complainant. It could have been based upon a finding favorable to the defendant on that contention. If so, the complainant should be estopped from setting up his claim. Forney v. Calhoun County, 86 Ala. 463, 5 So. 750; Ivy v. Hood, 202 Ala. 121, 79 So. 587; Hughes & Tidwell Supply Co. v. Carr, 203 Ala. 469, 83 So. 472; Godfrey v. Black, 240 Ala. 151, 156, 197 So. 892; Charles B. Teasley, Inc., v. Dreyfus, 252 Ala. 41, 39 So.2d 377.

Complainant also attempted to show in his bill as amended and his offer of proof that there was a contemporaneous parol agreement between the mortgagor Cooper, the ancestor of the parties here interested, and the mortgagee Holley that the rents from the mortgaged premises were to be collected and credited upon the mortgage debt until the indebtedness should be paid. The court ruled against complainant on that contention. In so far as the agreement sought to require the mortgagee to credit on the mortgage indebtedness such rent as he might collect before foreclosure, it imposed no greater obligation on the mortgagee than the law does without such agreement. American Freehold Land Mortgage Co. v. Pollard, 132 Ala. 155, 32 So. 630; Coon v. Henderson, 242 Ala. 144, 5 So.2d 397.

Insofar as the effect of said parol agreement may be thought to extend the maturity of the mortgage beyond the law day as expressed in it, to wit, November 1, 1939, the agreement had the effect to contradict the terms of the mortgage in that respect and, therefore, was subject to the rule which prohibits that to be done. Jackson v. Sample, 234 Ala. 75, 173 So. 510; Regional Agricultural Credit Corp. v. Hendley, 251 Ala. 261, 37 So.2d 97. We discover no error of the court in his rulings upon that question.

If the Act of Congress has application to the instant transaction, it is hardly necessary to enlarge upon the theory that such invalidity would benefit only the soldier. The rights of tenants in common are several and not joint. Each cotenant has a several interest, subject to devolution as if it were not in common. Glass

v. Cook, Ala.Sup., 57 So.2d 505 [1]; Ruffin v. Crowell, 253 Ala. 653, 46 So.2d 218. We have therefore treated the effect of the Act as applicable to complainant and not his brothers and sisters, if applicable here at all.

We find no error in the decree of the trial court denying relief to complainant and dismissing the bill.

Affirmed.

LIVINGSTON, C. J., and LAWSON, SIMPSON and STAKELY, JJ., concur.